PEOPLE v FOSTER

Docket No. 103148. Submitted October 13, 1988, at Detroit. Decided November 16, 1988.

Christopher L. Foster was charged with a narcotics offense in Recorder's Court of Detroit following the execution of a search warrant at his residence. The house, described by the police informant as a one and one-half story frame single-family residence, actually contained two living quarters connected by an unlocked door. Defendant and his wife resided in one and his mother-in-law resided in the other. The police, after discovering two living quarters, proceeded to search both. The court, Dominick R. Carnovale, J., granted defendant's motion to suppress the evidence seized and dismissed the information. The people appealed.

The Court of Appeals *held:*

The court erred in suppressing the evidence discovered as a result of the search.

Reversed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Hoffa, Chodak & Robiner* (by *Norman R. Robiner*), for defendant.

Before: WEAVER, P.J., and MAHER and C. W. SIMON, JR.,* JJ.

PER CURIAM. The prosecution appeals as of right from the trial court's suppression of evidence of narcotics and narcotic paraphernalia seized pursuant to a search warrant. We reverse.

* Circuit judge, sitting on the Court of Appeals by assignment.

I

Based upon an informant's information that the dwelling to be searched was a one and one-half story light frame single-family residence, Police Officer Patrick Tinney obtained a search warrant, naming and describing defendant, in order to search the premises at 12466 Racine in the City of Detroit. On the day of the police raid, Officer Tinney did not notice a second doorbell at the front door or a door leading upstairs, but, upon entering the house, found defendant . and his mother-in-law on the first floor and contraband and narcotics paraphernalia on the second floor.

From the outside, the house appeared to be simply a one and one-half story home. There was only one address on the door outside the house, and defendant used this address on his driver's license. At the evidentiary hearing, defendant's wife testified to her belief that, prior to her having moved, along with her mother and defendant, into the premises some two years before this incident, the house had been altered to permit living quarters upstairs as well as downstairs. Defendant's wife also testified that the door between the two living quarters was kept unlocked so that she could take care of her mother, who occupied the first floor. She further testified that she was "up and down the stairs all the time" when at home, and that she did her cooking both upstairs and downstairs.

Although Officer Tinney testified that there were other police officers involved in the raid, that he had only seized contraband from the upstairs portion of the house, and that he believed another police officer had found narcotics in a brass flower pot downstairs, the trial court refused to allow the prosecution to call another police officer as a wit-

ness to having found contraband in the downstairs portion of the house. The trial court granted defendant's motion to suppress the evidence seized, ruling that the search warrant on its face insufficiently described the premises to be searched and that the police wrongly, "knowingly and intentionally" searched both the upstairs and downstairs portions of the house.

## II

We are persuaded by the prosecution's argument on appeal that the trial court clearly erred in suppressing the evidence of contraband. A review of the record indicates that the police did not know prior to the search, nor was it objectively reasonable to expect them to know, that the information which their informant had given them the day before they obtained the warrant was incomplete. To an objective observer the house appeared to be a single-family dwelling with one address.

Officer Tinney, as the affiant requesting the search warrant, attested to having seen the informant enter the front door of the premises, be admitted, and after several minutes leave the premises, directly return and relinquish a quantity of cocaine purchased from the seller, described as defendant. The informant had only entered the first floor of the premises.

Although the house was divided into two living areas, the elderly mother, her daughter and defendant appeared to be living as a family unit, with free access to each other's living areas. A review of the record discloses that the police did not know that this single-entry house was subdivided internally until they entered the house to commence their search. We believe that this situation is similar enough to that described in *Maryland v*

*Garrison,* 480 US 79; 107 S Ct 1013; 94 L Ed 2d 72 (1987), to fall within the acceptable parameters of a valid search warrant reasonably describing with sufficient particularity the premises to be searched.

Importantly, defendant can show no prejudice from a search of the entire house since, unlike the neighbor who was caught by accident although not the target of the search in *Garrison, supra,* defendant was known to be the narcotics seller living at the address described. 480 US 86-89. The trial court erred in allowing him to assert another's Fourth Amendment rights vicariously. See *People v Smith,* 420 Mich 1, 17-29; 360 NW2d 841 (1984). See also *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978).

The order of suppression is reversed and the cause remanded for trial.