*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

TERREL DEONTAE ALLS,

        Defendant-Appellee.

UNPUBLISHED
March 18, 2021

No. 350962
Wayne Circuit Court
LC No. 19-003856-01-FH

Before: O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

The prosecution appeals as of right the trial court's order dismissing the charges against defendant of possession with intent to deliver 450 grams or more, but less than 1,000 grams, of cocaine, MCL 333.7401(2)(a)(*ii*), and possession of a firearm during the commission of a felony, MCL 750.227b. The issue on appeal is whether the trial court erred in granting defendant's motion to suppress evidence seized pursuant to a search warrant. We conclude that it did and therefore reverse.

## I. BACKGROUND

On May 6, 2019, Officer Alanna Mitchell of the Detroit Police Department (DPD) swore an affidavit before a judge and was granted a search warrant for defendant's house. That warrant provided that DPD could search, in relevant part, "The entire premises and curtilage of 12036 MONTROSE DETROIT, MI 48227 . . . which is described as a 2 story single family . . . dwelling . . . ." Officers from DPD executed that warrant and seized multiple guns, cocaine, thousands of dollars in cash, and a digital scale. Defendant was charged as noted above and bound over for trial by the district court.

-1-

Defendant moved to suppress the evidence seized pursuant to the search warrant, arguing that the warrant failed to state with sufficient particularity the place to be searched.[1] Toward that end, defendant noted that, contrary to the description on the warrant, 12036 Montrose was a multifamily house with two subunits, as evidenced externally by the two electricity meters on the back of the house. Defendant also argued that the officers executing the warrant were required to discontinue their search as soon as they realized the house had more than one subunit. In response, the prosecution argued that the warrant sufficiently described the place to be searched in light of the information available to Officer Mitchell when she swore the affidavit. The prosecution noted there were no outward signs that 12036 Montrose had more than one unit. There was only one address, one door, and one mailbox. The prosecution also argued that the multiunit nature of the house was not apparent even from inside, so the officers acted reasonably in continuing with their search. In the alternative, the prosecution argued the officers acted in good-faith reliance on the facially valid search warrant and, as such, exclusion was not appropriate.

The trial court granted defendant's motion to suppress, reasoning:

> That joker was a two-family flat, no if, and [sic] or buts about it. And because it was and it wasn't sufficiently identified in the search warrant, I'm going to grant the motion by the defense and suppress the evidence.

Without the suppressed evidence, the prosecution did not have enough evidence to proceed to trial, and the following exchange between the trial court and the parties occurred:

> *Mr. Casey* [prosecutor]: Your Honor, with the granting of defense's motion to suppress the evidence based on the, I suppose it would be the deficiency of the search warrant, we have a trial date set for next Tuesday, the day after Labor Day. With the evidence suppressed, we're not gonna be able to proceed.
>
> *Mr. Shaw* [defense counsel]: There's a motion?
>
> *Prosecutor*: Well, no. I assume defense is moving to dismiss.
>
> *Defense counsel*: I assume the prosecutor would want to dismiss.
>
> *The Court*: Well, since there are no efforts [sic], he can't go forward. Then without the evidence, the prosecution can't proceed.
>
> *Defense counsel*: I have no objection to his request for dismissal.
>
> *The Court*: Okay. It'll be dismissed without prejudice.

---

[1] Defendant also argued the warrant was not based upon probable cause, but the trial court did not address this argument and it has not been presented to this Court for review. We therefore will proceed under the assumption that there was probable cause to support the warrant.

*Prosecutor*: Just for the record, I supposed I could ask for a stay pending appeal, but—

*The Court*: (Interposing) But he's findable. You're findable. The search warrant kind of doesn't speak for itself, or speaks for itself. Whichever. All right.

*Defense counsel*: Thank you, your Honor.

*The Court*: I'll sign a dismissal.

The court accordingly dismissed the charges against defendant without prejudice. In the ensuing order, the trial court checked the box stating "[t]he case is dismissed on the motion of the court," but someone—presumably the trial court—crossed out "court" and wrote "PEOPLE." The prosecution now appeals.

## II. MOOTNESS

Before addressing the prosecution's substantive argument, it is necessary to address defendant's contention that the prosecution mooted or otherwise waived appellate review by moving or agreeing to dismiss the case. Because the prosecution plainly did not move to dismiss the charges or otherwise affirmatively agree to the dismissal, defendant's argument is based on an incorrect factual premise and does not warrant appellate relief.

Defendant's argument relies primarily on *People v Richmond*, 486 Mich 29; 782 NW2d 187 (2010). There, after the trial court granted the defendant's motion to suppress evidence, "[t]he prosecutor then moved to voluntarily dismiss the case without prejudice, stating that '[g]iven the Court's decision, it would make more sense for me to dismiss this case at this time since we are not able to go forward since the evidence has been suppressed.'" *Id*. at 33. Our Supreme Court held that "the prosecution's own action clearly rendered its subsequent appeal moot," explaining that, "because all the charges against defendant had been dismissed at the time of the prosecution's appeal, the Court of Appeals [subsequent] judgment was based on a pretended controversy that did not rest upon existing facts or rights." *Id*. at 35-36 (quotation marks and citations omitted). The Court recognized that, generally, the prosecution would have an appeal as of right from a dismissal, but concluded that the prosecution "denied itself appellate review by obtaining dismissal of its own case and, therefore, rendering its appeal moot." *Id*. at 37.

Here, unlike in *Richmond*, the prosecution did not move to dismiss the charges. The prosecution recognized the reality that, in light of the trial court's decision to grant defendant's motion to suppress, the prosecution would not have sufficient evidence to proceed at trial. Afterwards, however, when defense counsel asked if there was "a motion," the prosecutor unequivocally stated "no." Both parties then stated that they "assume[d]" the other side wanted to dismiss, to which the trial court stated that the prosecution "can't go forward" and "without the evidence, the prosecution can't proceed." It accordingly stated that the case would "be dismissed without prejudice."

On these facts, we agree with the prosecutor that the trial court sua sponte dismissed the case,[2] despite the court's order noting that the dismissal was on motion of "the PEOPLE." Again, when defense counsel asked the prosecutor if there was a motion, the prosecutor unequivocally stated "no." There is simply no other way to interpret this—the prosecutor stated that he was not moving to dismiss.[3] The trial court's order reflecting otherwise is clearly an error that inaccurately reflected what was stated on the record at the proceedings.

Defendant's argument on appeal is premised on a misunderstanding of *Richmond*. According to defendant, the "bright-line rule" from *Richmond* is that "following a grant of a motion to suppress, if the prosecutor agrees to dismiss the charges, the prosecutor moots any appeal of the suppression decision." Yet the operative fact in *Richmond* that rendered the appeal moot was that the prosecutor moved for dismissal. The *Richmond* Court stated, "Thus, in this case, *the prosecution . . . denied itself appellate review by obtaining dismissal of its own case* and, therefore, rendering its appeal moot." *Richmond*, 486 Mich at 37 (emphasis added).

Moreover, even if the rule stated by defendant is correct, he is incorrect that the prosecution here "agreed" to the dismissal. The prosecutor never stipulated to dismissal. While the prosecutor pointed out that, in light of the suppression of evidence, he would not have sufficient evidence to proceed to trial, the prosecutor explicitly denied that he was moving to dismiss. After the trial court stated that the case should be dismissed, the prosecutor never voiced any agreement for the court's decision. More importantly, after the trial court stated that the case was going to be dismissed, the prosecution attempted avoid that result; the prosecutor appears to have attempted to stay the proceedings pending an appeal, but the trial court cut the prosecutor off and ruled that dismissal was appropriate. Ultimately, the record only reflects that the prosecutor did not contest the dismissal, which is clearly distinct from affirmatively agreeing to the dismissal.

Defendant alternatively argues that the prosecution lacks standing to appeal because it is not an "aggrieved party" under MCL 770.3(1) and MCR 7.203(A). Defendant contends that the prosecution is not an aggrieved party because its "injury" arose after it "initiated and then acquiesced to the dismissal." As defendant recognizes, to have standing a party "must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment . . . ." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 292; 715 NW2d 846 (2006). The prosecution here can clearly demonstrate an injury arising from the trial court's actions—the trial court sua sponte dismissed the prosecution's case against defendant. Defense counsel never moved for dismissal, and the prosecutor explicitly denied that he was moving for dismissal, yet the case was still dismissed. Because neither party moved for dismissal, the only possible

---

[2] Defendant contends that the trial court could not have sua sponte dismissed the case because the court "invited the parties to make a motion to dismiss," yet nowhere in the record did the trial court make such an invitation.

[3] Defendant argues that it is significant that, when defense counsel stated that he had "no objection to [the prosecutor's] request for dismissal," the prosecutor did not contest the characterization. We disagree with defendant that this is significant. The prosecutor had already stated that he was not moving to dismiss. Defense counsel representing that the prosecutor was in fact moving to dismiss does not change the reality that the prosecutor unequivocally stated that he was not.

conclusion is that the trial court sua sponte dismissed the case. On these facts, the prosecution has standing to appeal.

Lastly, defendant argues that even if the case is not moot and the prosecution has standing to appeal, the prosecution's conduct "invited" any error that occurred below. " 'Invited error' is typically said to occur when a party's own affirmative conduct directly causes the error." *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003). This argument misses the mark, however. The error alleged by the prosecution is the trial court's granting defendant's motion to suppress, not its dismissal of the case. Indeed, the prosecution does not contest that dismissal was appropriate if the motion to suppress was properly granted. Therefore, the prosecution did not "invite" the error that it now contests on appeal.

For these reasons, defendant's arguments that the prosecution mooted or otherwise waived its right to appeal are without merit. It is therefore appropriate to review the substantive arguments raised by the prosecution on appeal.

## III. MOTION TO SUPPRESS

On appeal, the prosecution contends that the trial court erred by granting defendant's motion to suppress. We agree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's factual findings in a ruling on a motion to suppress for clear error, *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005), but reviews de novo a trial court's interpretation of the law or the application of a constitutional standard to uncontested facts, *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *People v James*, 327 Mich App 79, 90; 932 NW2d 248, 255 (2019).

### B. ANALYSIS

The prosecution argues the trial court erred by holding that the premises to be searched were not "sufficiently identified in the search warrant" because the warrant described the premises to be searched with sufficient particularity given the information available to Officer Mitchell at the time she sought the warrant. We agree.

The right of a defendant to be secure from unreasonable searches and seizures is guaranteed by both the federal and state constitutions. US Const, Am IV; Const 1963, art 1, § 11.[4] A search is considered unreasonable when it is conducted pursuant to an invalid warrant. *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). For a warrant to be valid, it must, among other things, "particularly describe the place to be searched." *Id*. "It is enough if the

---

[4] This provision of the Michigan Constitution "is to be construed to provide the same protection as that secured by the Fourth Amendment, absent 'compelling reason' to impose a different interpretation." *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991) (citation omitted).

description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925). The particularity "requirement is designed to avoid the risk of the wrong property being searched or seized." *People v Hampton*, 237 Mich App 143, 151; 603 NW2d 270 (1999). When an officer knows or reasonably should know that a dwelling has more than one subunit, the officer is obligated to exclude from the scope of the requested warrant all subunits not belonging to the target of the warrant. *Maryland v Garrison*, 480 US 79, 85; 107 S Ct 1013; 94 L Ed 2d 72 (1987). "But [courts] must judge the constitutionality of [officers'] conduct in light of the information available to them at the time they acted," so if it was reasonable to believe that a dwelling did not have more than one subunit when a warrant was issued, "the warrant, insofar as it authorized a search that turned out to be ambiguous in scope, was valid when it issued." *Id*. at 85-86.

Officer Mitchell surveilled 12036 Montrose from outside on four separate days. A photograph shows that the house was a two-story home with only one front door. Based on the information collected during her surveillance of the house, Officer Mitchell obtained a search warrant for "[t]he entire premises and curtilage of 12036 Montrose," which was described in the warrant as a two-story, "single family" house. At some point after entering the house to execute the warrant, officers discovered that 12036 Montrose was not actually a single-family house, but had two subunits—one upstairs and one downstairs. Both units were apparently searched and various items were seized.

The trial court granted defendant's motion to suppress, reasoning that the house "was a two-family flat, no if, and [sic] or buts about it." As noted above, *if* an officer knows or reasonably should know of the multiunit character of a house, he or she must ensure that the warrant identifies the subunit for which there is probable cause to search. *Id*. at 85. From the court's factual finding, however, it is not clear whether the court recognized this was the law and found as a matter of fact that Officer Mitchell knew or should have known that 12036 Montrose was a multifamily house, or whether the court merely believed that the warrant was invalid because the house was, in fact, a multifamily house. In either case, the court erred.

If the court reached the latter conclusion, that was error because, again, a warrant is only invalid for failing to identify a multifamily dwelling as a multifamily dwelling if the officer knew or should have known that the dwelling was a multifamily dwelling at the time the warrant was issued. See *id*. This follows the general principle that a warrant's description need only ensure that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended. *Steele*, 267 US at 503. Our Supreme Court, applying this principle, has held that evidence seized pursuant to a search warrant with the *wrong address* did not need to be suppressed because the warrant otherwise provided enough information to guide the executing officers to the correct place and officers had made efforts to obtain the correct address. *People v Westra*, 445 Mich 284, 285; 517 NW2d 734 (1994). Thus, if the trial court granted defendant's motion to suppress simply because the description of 12036 Montrose in the warrant differed from reality, then the court erred as a matter of law.

Alternatively, if the court meant that Officer Mitchell knew or reasonably should have known 12036 Montrose was a multifamily house when she sought the warrant, we conclude that the court clearly erred. There is a photograph of the house in the record. The house has a single front entrance, and this Court cannot discern any feature about the front of the house that would

have alerted Officer Mitchell to the fact that the house had more than one subunit. Defendant points out that there were two electricity meters on the back of the house, but this fact does not mandate a different result, as it was not unreasonable for Officer Mitchell to only examine the front of the house before requesting a warrant. Indeed, if officer Mitchell had investigated the back of the house before requesting the warrant, it could have alerted defendant to the fact that he was being investigated and given him the opportunity to destroy evidence or evade the police. On these facts, we are left with a definite and firm conviction that the trial court misapprehended what Officer Mitchell reasonably should have known. *James*, 327 Mich App at 90. Given the information available to Officer Mitchell when she requested the warrant, the warrant fairly described the place to be searched with sufficient particularity to ensure the officers executing the warrant searched the correct location. *Steele*, 267 US at 503; *Garrison*, 480 US at 85. Contrary to the trial court's conclusion, the warrant was valid when it issued. See *People v Foster*, 174 Mich App 505, 507-508; 436 NW2d 397 (1988) (holding that, although the at-issue warrant did not describe the place to be searched as a multifamily dwelling, the warrant nevertheless fell "within the acceptable parameters of a valid search warrant reasonably describing with sufficient particularity the premises to be searched" because "the police did not know that this single-entry house was subdivided internally until they entered the house to commence their search").[5]

Defendant contends that the trial court's decision should be affirmed based on *Groh v Ramirez*, 540 US 551; 124 S Ct 1284; 157 L Ed 2d 1068 (2004). Defendant correctly notes that in *Groh*, the United States Supreme Court held that the at-issue warrant was invalid, and that the warrant identified the place to be searched as a "single dwelling residence . . . blue in color." *Id*. at 558 (quotation marks omitted; alteration in *Groh*). But defendant is incorrect to the extent that he asserts that *Groh* held that the warrant was invalid because it failed to sufficiently describe the place to be searched with particularity. Instead, *Groh* held that the warrant failed to describe the person or things to be seized. See *id*. at 557 ("The warrant in this case complied with the first three [warrant] requirements: It was based on probable cause and supported by a sworn affidavit, *and it described particularly the place of the search*. On the fourth requirement [that the warrant describe the person or things to be seized], however, the warrant failed altogether.") (Emphasis added); *id*. at 558 ("[I]n the space set aside for a description of the items to be seized, the warrant stated that the items consisted of a 'single dwelling residence . . . blue in color.' In other words, the warrant did not describe the items to be seized *at all*.") (Alteration in *Groh*.) Therefore, contrary to defendant's argument, *Groh* is readily distinguishable from this case and does not dictate a different result.[6]

---

[5] Though not strictly bound by *Foster* under MCR 7.215(J)(1) because it was published before November 1, 1990, we nevertheless find the case persuasive. See *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

[6] Defendant does not seem to argue that the warrant here was invalid because it failed to describe with particularity the items to be seized, as was the case in *Groh*. Defendant is, however, critical of the extensiveness of the items identified for seizure in this case, arguing that the warrant "directed the officers to seize virtually everything in the home." While the warrant undoubtedly listed many items to be seized, all of the items were related to narcotics trafficking. Moreover, the

The parties also dispute whether the execution of the warrant violated defendant's Fourth Amendment right to be secure in his home. As explained by the Supreme Court of the United States in the context of *Garrison*:

> If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to [the] apartment [of the person identified in the warrant]. Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. The officers' conduct and the limits of the search were based on the information available as the search proceeded. [*Garrison*, 480 US at 86-87.]

Exactly when the officers executing the warrant in this case knew—or should have known—that the unit they were searching was a multifamily dwelling is a factual question that the trial court never reached. The resolution of this fact, however, is irrelevant to the disposition of this appeal. If the officers did not know and should not have known that the residence they were searching was a multifamily residence until the warrant was fully executed, then there was no Fourth Amendment violation. However, it seems unlikely that the officers did not know they were searching a multifamily residence before they completed their search, particularly given Officer Mitchell's testimony at the preliminary examination that, at some point after she entered the house with the "entry" team, she noticed that there were two separate living spaces.

But even if officers discovered that the residence was a multifamily dwelling while executing the warrant, *defendant's* constitutional rights were never violated. As explained in *Garrison*, once officers become aware that a presumed single-family dwelling is actually a multifamily dwelling, the officers are "obligated to limit their search to [the] apartment [of the person identified in the warrant]," *Garrison*, 480 US at 86, which in this case was defendant. Thus, to any extent that officers were required to discontinue their search, it was only with respect to the other apartment; they could continue their search limited to the apartment of the person identified in the warrant, defendant. See *id*. at 87 (explaining that the officers "were required to discontinue the search of *respondent's* apartment"—who was not the person identified in the search warrant— "as soon as they discovered that there were two separate units on the third floor") (emphasis added). Defendant does not point to any authority to support his apparent assertion that the officers were required to stop searching the entire building, not just his neighbor's apartment, once they realized the residence was a multifamily dwelling. The only constitutional violation in this case, if there was one, was of the rights of defendant's neighbor, which defendant cannot assert. See *Foster*, 174 Mich App at 508 (explaining that the defendant seeking to suppress the evidence was "the target of the search"—unlike the respondent in *Garrison*—and accordingly holding that "[t]he

---

warrant identifies particularized items to be seized, and certainly did not direct officers "to seize everything in the home," as defendant contends.

trial court erred in allowing [the defendant] to assert another's Fourth Amendment rights vicariously").[7]

    Reversed.


/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher

---

[7] The parties also argue whether the good-faith exception to the exclusionary rule should have precluded suppression in this case. In light of our holding, we need not address this issue.