*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DAVID JOHN SLOUGH,

Defendant-Appellee.

UNPUBLISHED
February 24, 2026
11:47 AM

No. 374485
Charlevoix Circuit Court
LC No. 2024-056114-FH

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Following the execution of a search warrant on his residence, defendant was charged with felon in possession of a firearm, MCL 750.224f; felon in possession of ammunition, MCL 750.224f(6);[1] and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court dismissed the charges after granting defendant's motion to suppress evidence seized from his residence because the court concluded that the search warrant was invalid. The prosecutor now appeals as of right. We affirm.

## I. BACKGROUND

In November 2023, Detective Jacob Byrd of the Charlevoix County Sheriff's Department was involved in a jury trial at the Charlevoix County courthouse. During the trial, he noticed several handmade pamphlets, with the words "Jury Nullification" handwritten on them, located on a table accessible to the public. The table was near the single public entryway that jurors would use to enter the courthouse. An attorney with the Charlevoix County Prosecuting Attorney's office also showed one of the pamphlets to Detective Byrd. After speaking with a county clerk's office employee, Detective Byrd learned that defendant had recently been in the courthouse signing documents and likely discovered that a jury trial was taking place. Detective Byrd matched the handwriting on the pamphlets with the documents that defendant had signed. A Law Enforcement

---

[1] This section is now designated as MCL 750.224f(7), effective February 13, 2024, by 2023 PA 201.

-1-

Information Network search revealed that defendant was a convicted felon who lived at the address "15340 Paddock Road."

With this information, Detective Byrd obtained a warrant to search defendant's residence for evidence of jury tampering in violation of MCL 750.120a. The warrant extended to "[t]he residence, property, all vehicles, and out-buildings" located at the address and described the residence as "several trailers behind pine[] trees and hard to be seen from the roadway," specifically as "2 white and brown trailer style residences." The warrant further described the property to be searched as:

> Any and all electronic devices capable of storing electronic data, computers, cell phones, phones, printers, any and all white 8.5x11 in in size paper with writing "RocketLawyer.com", blue in color ink pen, gold in color marker, blue and red color crayon writing utensil, black ink pen.

> Cellphone and computers to be searched for manufacture of "Jury Nullification" pamphlets.

> Cellphones:

> > A forensic examination of the above mentioned cellphone will be conducted by any means possible, including but not limited to JTAG or Chip Off examination, to locate any and all contents. Authorization to search the contents of the cellphone equipment using such technology as necessary, and with specialized personnel as may be needed off-site, for the retrieval of evidence of crimes specified herein.

> Computers:

> > Any and all computer hard drives and or computers. Any and all resource discs, manuals, computer discs, materials needed to operate computer and or equipment, including any codes or passwords. Any and all CDS, DVDS, discs, or data storing devices or equipment. Authorization to search the contents of the computer equipment using such technology as necessary, and with specialized personnel as may be needed off-site, for the retrieval of evidence of crimes specified therein.

Late in the evening, Detective Byrd, as well as several other officers, attempted to execute the search warrant on defendant's residence. Defendant lived at the end of a long, shared driveway on the same property as two other trailer-style residences. The officers first approached the middle trailer but discovered that it was not defendant's residence when they briefly detained two men inside. Realizing their mistake, the officers retreated from the middle trailer and approached the last trailer on the driveway. After removing defendant and other occupants from the residence, the officers found and seized several electronic devices including computers, cell phones, and a printer. The officers also found and seized an original "Jury Nullification" letter. Relevant to this appeal, the officers discovered several firearms and ammunition in defendant's bedroom.

Defendant was charged as previously noted related to the firearms and ammunition. However, he was not charged with any offenses related to jury tampering.

Defendant moved to suppress the evidence seized from his residence. Defendant argued that the search warrant was not particular enough in its description of defendant's residence because it mistakenly referred to "several" trailers at the address as if they all belonged to defendant. Moreover, defendant argued that the officers failed to recognize obvious signs—such as the mailboxes at the front of the driveway—that indicated there were separate residences with distinct addresses on the property. The trial court heard testimony from Detective Cody Wheat about the execution of the warrant. He testified that he was under the impression that all three trailers on the property belonged to defendant. Following the hearing, the trial court issued a written decision and order that granted defendant's motion to suppress the evidence seized from his residence. The trial court concluded that the search warrant failed to meet constitutional particularity requirements and that the good-faith exception to the exclusionary rule did not apply in this case. Subsequently, the trial court issued an order dismissing the charges against defendant because the case could not proceed without the suppressed evidence.

This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews de novo questions of constitutional law and a trial court's decision on a motion to suppress evidence." *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022). We also review de novo the application of the exclusionary rule to a constitutional violation. *People v Swenor*, 336 Mich App 550, 564; 971 NW2d 33 (2021). "A trial court's factual findings made when ruling on a motion to suppress are reviewed for clear error." *People v Woodard*, 321 Mich App 377, 382; 909 NW2d 299 (2017). "A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *Swenor*, 336 Mich App at 563-564.

## III. FOURTH AMENDMENT

The prosecutor argues that the trial court erred by granting defendant's motion to suppress because the search warrant described the place to be searched with sufficient particularity. We disagree.

"The Fourth Amendment guarantees to the people the right 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]' " *Brcic*, 342 Mich App at 277, quoting US Const, Am IV. Further, it provides that warrants shall not be issued except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. Similarly, the Michigan Constitution provides that "[t]he person, houses, papers, possession, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures" and that "[n]o warrant to search any place or seize any person or thing or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath and affirmation." Const 1963, art 1, § 11. Absent a compelling reason, we

construe the Michigan Constitution "to provide the same protection as that secured by the Fourth amendment." *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991).

"The purpose of the particularity requirement in the description of the items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Brcic*, 342 Mich App at 278 (quotation marks and citation omitted). We have adopted a two-prong test when analyzing particularity challenges to search warrants. *People v DeRousse*, 341 Mich App 447, 462; 991 NW2d 596 (2022), quoting *People v Hampton*, 237 Mich App 143, 150-151; 603 NW2d 270 (1999) (quotation marks and citations omitted). As explained by this Court in *Hampton*:

> The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement is whether the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended. *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925); *United States v Gahagan*, 865 F 2d 1490, 1496 (CA 6, 1989). The Fourth Amendment safeguard is designed to require a description that particularly points to a definitely ascertainable place so as to exclude all others. *Id*. Thus, the test for determining the sufficiency of the description of the place to be searched is (1) whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and (2) whether there is any reasonable probability that another premises might be mistakenly searched. *Id*. at 1496-1497. The requirement is designed to avoid the risk of the wrong property being searched or seized. [*Hampton*, 237 Mich App at 150-151.]

"[A] search warrant and the underlying affidavit are to be read in a common-sense and realistic manner." *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992).

In this case, the search warrant described the place to be searched as "[t]he residence, property, all vehicles, and out-buildings at 15340 Paddock Rd, Marion Twp, County of Charlevoix, State of Michigan." The search warrant further provided as follows: "The residence is described as several trailers behind pines trees and hard to be seen from the roadway. The residence that can be seen is described as 2 white and brown trailer style residences."

Under the first prong of the test, the location of defendant's residence "was not described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort." *Hampton*, 237 Mich App at 150. The trial court was presented with evidence that there were at least three separate residences located at or near the property on which defendant's trailer was located. These addresses were 15340 Paddock Road (defendant's address), 15338 Paddock Road, and 15336 Paddock Road. This fact was established by photographs of a communal mailbox set at the entry point of the driveway leading to the residences. Although the prosecutor argues that there was no context in the photographs as to where the mailboxes were located in relation to defendant's home, the body camera video shows that the mailboxes were placed at the beginning of the shared driveway near the public roadway and visible even at night when the search took place. Further, when asked at the preliminary examination whether he was

aware that there were three addresses to the property, Detective Byrd testified that he "was aware of a couple different addresses, as for three, I don't believe I was aware of three."

Despite the multiple residences on the property, the warrant did not identify with particularity which residence belonged to defendant and instead authorized a search of the entire property. On its face, the warrant did not describe defendant's residence with particularity because it simply lumped together defendant's residence with other residences on the property and left the officers to guess which was subject to search. Under these circumstances, the correct address alone did not satisfy the particularity requirement. The prosecutor argues that the lack of particularity in the description of the residence is understandable given the rural character of the property, the fact that the residences were obscured by trees, and that the magistrate was informed that the property was hard to see from the roadway. However, there were readily observable facts that should have informed any reasonable officer that there were separate residences on the property. Additional investigation was necessary to particularly describe which residence belonged to defendant.

With regard to the second prong, the search warrant certainly created more than a "reasonable probability that another premises might be mistakenly searched." *Hampton*, 237 Mich App at 151. In fact, the search warrant resulted in the officers searching the wrong residence because of the lack of particularity. Even if the officers had correctly searched defendant's residence first, the warrant created the reasonable possibility that another residence would have been searched because the warrant failed to distinguish defendant's trailer from the other two located on the property. The search warrant described two trailers that were white and brown in color as defendant's residence, making no attempt to identify which trailer belonged to defendant. This description essentially created a coin-flip situation that gave the officers a 50/50 chance of searching the wrong house, which, in fact, was exactly what happened. The odds of immediately finding defendant's trailer actually were even lower considering that there was a third trailer located on the premises.

The prosecutor cites three cases to support his argument that the search warrant was sufficiently particular in describing defendant's residence. However, all of these cases are distinguishable because they involved single buildings subdivided into individual residences. See *Maryland v Garrison*, 480 US 79 85; 107 S Ct 1013; 94 L Ed 2d 72 (1987); *People v Foster*, 174 Mich App 505, 507; 436 NW2d 397 (1988); *People v Alls*, unpublished per curiam opinion of the Court of Appeals, March 18, 2021 (Docket No. 350962), p 1; *People v Moore*, unpublished per curiam opinion of the Court of Appeals, April 5, 2011 (Docket No. 295266), p 3. In contrast, this case concerns a warrant that authorized the search of multiple individual residences on the same property premised on the mistaken belief that all of them belonged to defendant. These are entirely different circumstances than those when an officer reasonably fails to recognize that a single house contains multiple individual dwellings. *Garrison*, 480 US at 85. Here, evidence was provided to the trial court that each residence was easily identifiable as a separate residence, even in the dark of night. Not only were there separate structures, but the mailboxes at the entrance to the property indicated multiple addresses, and Detective Byrd testified that he was aware of multiple addresses for the property.

The search warrant in this case more closely resembles the deficient warrant in *People v DeRousse* that "described with particularity only the residence located on the property," but failed

to describe "barns located on the curtilage of the home" that were also searched. *DeRousse*, 341 Mich App at 462-463. It is true that the search warrant in this case described two of the residences in some detail. However, the warrant made no distinction between defendant's actual trailer, which was beige and brown, and the first trailer, which was white, that was searched by mistake. It also gave no description for the third trailer located on the property at all. As written, the search warrant gave the officers "undirected discretion" to search every building located on the property, regardless of whether defendant owned them or not. See *Brcic*, 342 Mich App at 278.

For the reasons given, the search warrant in this case did not describe with sufficient particularity defendant's residence and violated both the Fourth Amendment and Michigan Constitution, art 1, § 11. Therefore, the trial court did not err in granting defendant's motion to suppress for this reason.

IV. EXCLUSIONARY RULE

Even if the search warrant lacked sufficient particularity, the prosecutor argues that the trial court erred by applying the exclusionary rule because the officers relied on the search warrant in good faith. We disagree.

"Ordinarily, if a warrant is determined to be invalid because it lacked a probable-cause basis or was technically deficient in some other manner, any evidence seized pursuant to that warrant as a result of the initial illegal search, is inadmissible as substantive evidence in related criminal proceedings." *People v Hellstrom*, 264 Mich App 187, 193; 690 NW2d 293 (2004) (quotation marks and citation omitted). This "exclusionary rule" is a "judicially created remedy that originated as a means to protect the Fourth Amendment rights of citizens to be free from unreasonable searches and seizures." *People v Hawkins*, 468 Mich 488, 498; 668 NW2d 602 (2003) (citations omitted). The purpose of the rule is to deter police misconduct in the form of constitutional violations. *People v Goldston*, 470 Mich 523, 526; 682 NW2d 479 (2004).

Acknowledging that the underlying purpose of the rule does not require exclusion of evidence in all cases, the United States Supreme Court has recognized a good-faith exception to the exclusionary rule, *United States v Leon*, 468 US 897, 907-908; 104 S Ct 3405; 82 L Ed 2d 677 (1984), and our Supreme Court subsequently adopted that exception, *Goldston*, 468 Mich at 541. "Under the good-faith exception, evidence obtained through a defective search warrant is admissible when the executing officer relied upon the validity of the warrant in objective good faith." *DeRousse*, 341 Mich App at 465. However, there are certain circumstances in which the good-faith exception does not apply, including when a warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 US at 923. See also *People v Czuprynski*, 325 Mich App 449, 472; 926 NW2d 282 (2018).

As discussed, in light of the readily obtainable evidence that there were multiple residences on the property and the inherent ambiguity in the search warrant of failing to identify which residence belonged to defendant, we conclude that the warrant in this case was so lacking in particularity that no officer could reasonably presume it to be valid. See *Leon*, 468 US at 923. Accordingly, the good-faith exception to the exclusionary rule does not apply.

The prosecutor argues that the officers acted in good faith by attempting to obtain a description of the residence from the road and that the officers "could not have done more" without alerting the defendant to their investigation. We disagree. The record suggests that the officers did very little to attempt to discern which residence belonged to defendant and missed obvious signs that there were multiple residences. The difficulty of observing the property from the road does not excuse the lack of particularity and should have prompted the officers to conduct further investigation. We conclude that application of the exclusionary rule in this case will deter police misconduct by ensuring that officers conduct sufficient investigation to identify the property to be searched, rather than simply seeking an overly broad and ambiguous warrant.

In addition to the lack of particularity with regard to the description of defendant's residence, the trial court concluded that the search warrant was so overbroad with regard to authorizing a search of all of defendant's electronic devices as to be facially invalid under *People v Carson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355925) (*Carson I*), rev'd in part by *People v Carson*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166923) (*Carson II*).[2] On appeal, the prosecutor focuses its arguments on the particularity of the description of defendant's residence. The prosecutor only addresses the trial court's conclusion as to the breadth of the search of defendant's electronic devices in the statement of facts of its appellate brief, noting that *Carson I* was issued three months after the search warrant in this case was authorized and executed. As this issue has not been fully argued on appeal and we have already concluded that the search warrant was so facially deficient that it justifies application of the exclusionary rule, we decline to address whether the warrant also violated the particularity requirement with regard to the search of defendant's electronic devices.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman

---

[2] In *Carson I*, this Court held that a warrant for the search and seizure of the contents of a modern cell phone must be carefully limited in scope to satisfy the Fourth Amendment's particularity requirement. *Carson I*, ___ Mich App at ___; slip op at 13. Moreover, this Court held that a general warrant for search of a phone's entire contents may be so facially deficient that the good-faith exception to the exclusionary rule is inapplicable. *Id*. at ___; slip op at 15-16. Although ultimately concluding that the defendant had not met his burden to establish his ineffective assistance of counsel claim, our Supreme Court agreed that the search warrant violated the particularity requirement of the Fourth Amendment. *Carson II*, ___ Mich ___; slip op at 35.